# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TIMOTHY BRICE,

   Plaintiff,

   v.

CORRECTIONAL OFFICER DOSUMU,

   Defendant.

Civil Action No.: ELH-17-3837

## MEMORANDUM OPINION

Plaintiff Timothy Brice, who is self-represented, filed this civil rights action against defendant Adeotun Dosumu,[1] a correctional officer at Jessup Correctional Institution ("JCI"). ECF 1. Plaintiff alleges that Dosumu slapped his face in a deliberate attempt to maliciously cause him harm. *Id.* In response, defendant filed a motion to dismiss or for summary judgment (ECF 14), supported by a memorandum (ECF 14-1) (collectively, the "Motion") and exhibits. He denies that he ever intentionally touched plaintiff on the date in question and has provided medical records to establish that plaintiff's alleged injury was due to a tooth that needed to be extracted.

Plaintiff opposes the motion. ECF 16. But, he does not provide an affidavit in support of his opposition.[2] Rather, plaintiff states that there is video surveillance footage that proves his claim is valid. *Id.* Additionally, plaintiff moves for appointment of counsel. ECF 13.

---

[1] The Clerk is directed to correct the docket to reflect the full and accurate spelling of defendant's name.

[2] The Complaint is also unverified. ECF 1.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendant's Motion, construed as one for summary judgment, shall be granted and plaintiff's motion for appointment of counsel shall be denied.

### I. Background

#### A.

Plaintiff is an inmate confined at JCI. At all times relevant to the Complaint, he was assigned to "solitary." ECF 1 at 2. Brice claims that on November 1, 2017, at approximately 4:30 p.m., he called defendant over to his cell door so that he could hand defendant a sick call slip. After giving defendant the sick call slip, plaintiff claims defendant told him "next time hurry up," and then defendant reached through the "feed up slot" in plaintiff's cell door and slapped him across the face. *Id*. at 3; *see* ECF 14-2 at 2, 5.

Plaintiff asked defendant why he slapped him, and he claims that defendant simply smiled and said that plaintiff should "do something about [it]." *Id*. Plaintiff then asked to be taken to the medical unit to receive medical attention for his face, but defendant did not escort him there. *Id.* Rather, plaintiff claims that defendant walked back and forth in front of his cell and again reached through the slot in the cell door to slap plaintiff. *Id*.

Brice alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when defendant inflicted injuries to his face and denied him medical care for the injury. He states that his "cell buddy" witnessed the incident, that the video surveillance recording from the tier will verify his claims, and he seeks monetary damages as relief. *Id*.

#### B.

Defendant has submitted verified business records and a Declaration under oath in support of the following facts. *See* ECF 14-2; ECF 14-3; ECF 14-4.

On October 23, 2017, plaintiff received a Notice of Inmate Rule Violation charging him with violation of rules 101 (assault or battery on staff); 104 (use of intimidating, coercive, or threatening language); 312 (interference with the performance of staff duties); 400 (disobeying an order); and 405 (demonstration of disrespect or use of vulgar language). ECF 14-2 at 9. Officer Latasha Barrett is the officer who charged plaintiff with violating those rules. *Id.* Following a disciplinary adjustment hearing, plaintiff was found guilty of violating rules 100, 400, and 405, and was sentenced to 90 days of segregation. *Id.* at 11. Thus, at the time of the incident involving defendant (November 1, 2017), plaintiff was confined to disciplinary segregation.

On November 1, 2017, defendant was assigned to the D-Building, C Tier at JCI. ECF 14-3 at 1. At approximately 4:30 p.m., defendant was escorting the nurse, who was on the tier to distribute medication. *Id.* During the escort, plaintiff called defendant to his cell (number 323) and defendant told him to wait while he escorted the nurse. *Id.* at 2. When defendant arrived at plaintiff's cell, he observed plaintiff with a cup of "unknown liquid" in his hand and surmised that plaintiff intended to assault him. *Id.* In order to thwart that attempt, defendant put his hand through the feed slot on the cell door to block plaintiff from throwing the liquid. *Id.* He denies that he intentionally slapped plaintiff when doing so. *Id.*[3]

Defendant states he continued to escort the nurse through the rest of the tier, believing the incident did not result in any injury, either to himself or to plaintiff. *Id.* Five days later, defendant was made aware that plaintiff was claiming in an administrative remedy procedure complaint ("ARP") that he had been injured during the incident of November 1, 2017. *Id.*

---

[3] The Court observes that it would seem difficult for someone to be able to slap a prisoner in the face, in the way that plaintiff describes – *i.e.*, through a feeding slot in a cell door.

On November 6, 2017, when plaintiff reported that he had been injured by defendant, a Serious Incident Report was generated and he was seen by Carlin Lebreton, RN, for evaluation of his claimed injury. ECF 14-2 at 2; 14-3 at 2. Plaintiff was interviewed by Lt. Samson Balogun and escorted to the medical unit following the interview. ECF 14-2 at 2. Plaintiff reported to Lebreton that defendant had slapped the left side of his face twice, causing a sharp pain in his left jaw. ECF 14-3 at 2. Upon examination, Lebreton found no sign of injury inside or outside of plaintiff's jaw. *Id*. Specifically, Lebreton found no swelling, no discoloration of skin, and no apparent trauma. *Id*. Further, Lebreton noted that plaintiff's speech was clear and he had no difficulty speaking, but indicated he had to chew his food on the right side. *Id*.

On November 29, 2017, plaintiff requested a dental appointment, which was scheduled for December 15, 2017. But, plaintiff refused to leave his cell for the appointment. ECF 14-4 at 11, 17. On December 21 and 27, 2017, plaintiff submitted two more sick call requests for a dental exam, complaining of tooth pain. *Id*. at 8-9. He was seen by Ronald Holderman, DDS, on December 29, 2017, in response to his sick call requests. *Id*. at. 6-7, 18. Dr. Holderman identified two teeth that were partially impacted and malposed (#17 and #32) and recommended extraction. *Id*. In Dr. Holderman's oral surgery note, dated January 24, 2018, he noted that plaintiff's pain on the left side of his jaw was "mostly from #17." *Id*. at 6.

## II.  Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

4

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, ___ F.3d ___, 2019 WL 350375, at

6

*6 (4th Cir. Jan. 29, 2019); *Pisano v. Strach*, 763 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d), but asserts that the video surveillance footage from the prison housing unit is evidence that would support his claim. ECF 1; ECF 16. This court is aware that video surveillance taken by the stationary cameras inside prison housing

7

units have no sound. And, perhaps more important, they do not depict activity inside the cell. Therefore, the surveillance footage would be without evidentiary value in this case. Furthermore, plaintiff has not submitted any statement under oath in support of his claims, despite being advised of the effect of failing to do so. *See* ECF 15.

I will construe the Motion as one for summary judgment, because this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). Conversely, summary judgment is appropriate

8

if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323–24).

### III. Discussion

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The Eighth Amendment to the Constitution is at issue here. It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).[5] In *Graham v. Connor*, 490 U.S. 386 (1989), the touchstone case with respect to excessive force claims under § 1983, the Supreme Court rejected the notion "that all excessive force claims

---

[5] In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. It is not at issue here.

11

brought under § 1983 are governed by a single generic standard." *Id.* at 393. The Court held that claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against "unreasonable" seizures; claims of excessive force against a convicted prisoner are governed by the Eight Amendment's prohibition of "cruel and unusual punishment"; and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits "the use of excessive force that amounts to punishment." *Id.* at 394 & n.10.

The contours of a prisoner's constitutional right under the Eighth Amendment to be free from excessive force at the hands of corrections staff has long been established. Whether force used by prison officials was excessive is determined by inquiring if the "'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992) (quoting *Whitley*, 475 U.S. 320–21). The court must consider the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321; *see Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008).

Notably, the absence of significant injury is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had "the good fortune" to escape serious harm. *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability

12

to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.")

If "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. And, "no particular extent of physical injury is required to establish an excessive force claim under the Eighth Amendment." *Sawyer v. Asbury*, 537 Fed. App'x 283, 290 (4th Cir. 2013). To the extent injuries are modest, this would be reflected in the award of damages. *See Wilkins*, 559 U.S. at 40. On the other hand, "'not every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).

Although this Court is mindful that the absence of injury is not dispositive of an excessive force claim, there is no evidence that an assault occurred. Plaintiff has presented an unverified, bald allegation. Notably, although plaintiff denies attempting to assault defendant with what was referred to as an "unknown liquid," he admits in his opposition that he threw water on the floor, without explaining why he did so. ECF 16 at 1.

The defense did not supply a photo of the cell door or the location of the "feed-up slot" on the door. But, it seems unlikely that the defendant could have put his hand through the slat and reached the plaintiff's face in time to slap it. To the extent that defendant made physical contact with plaintiff during the encounter on November 1, 2017, that contact was minimal, caused no injury, and was intended to prevent plaintiff from throwing the liquid substance. The objective, verified evidence refuting plaintiff's claims supports the conclusion that defendant is entitled to summary judgment.

A separate Order follows.

February 14, 2019
Date

/s/
Ellen L. Hollander
United States District Judge